UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
In re:

ERIC WATTERSON,                                             Case No. 813-73637-reg

                                                            Chapter 7
                                    Debtor.
----------------------------------------------------------------x
DEBORAH CHITESTER, as administrator of
the estate of Alexander Watterson,                          Adv. Proc. No. 813-8160-reg

                                    Plaintiff,
v.


ERIC WATTERSON,

                                    Debtor/Defendant.
----------------------------------------------------------------x

## DECISION AFTER TRIAL

Before the Court is an adversary proceeding commenced by Deborah Chitester (the

"Plaintiff" or "Chitester"), in her capacity as administrator of the estate of Alexander Watterson,

seeking a determination that a $4,860 pre-petition judgment she holds against her brother, Eric

Watterson (the "Debtor"), is nondischargeable under §§ 523(a)(4) and (6) of the Bankruptcy

Code.  The Plaintiff, acting *pro se*, alleges that the Debtor filed knowingly false reports with the

Surrogate's Court regarding his deceased father's assets, failed to account for the decedent's

estate assets, and failed to distribute the decedent's estate property to its intended beneficiaries,

herself included. The Plaintiff also alleges that the Debtor willfully and maliciously converted

their deceased father's property for his personal benefit. The Plaintiff contends that the Debtor's

actions constitute fraud or defalcation while acting in a fiduciary capacity, and that his actions

caused willful and malicious injury to the decedent's estate, which she now represents as the

court-appointed administrator.  In his defense, the Debtor, also acting *pro se*, maintains that the

1

funds and the decedent's personal property he possessed were not taken fraudulently, or willfully and maliciously, but rather were used to pay expenses of the estate, including rent to decedent's landlord, or were stolen from the decedent's apartment.

For the reasons that follow, the Court finds that the Plaintiff has established by a preponderance of evidence that the $4,860 Surrogate's Court's judgment should be excepted from the Debtor's discharge under 11 U.S.C. § 523(a)(4).


**Procedural History**

On July 11, 2013, Eric Watterson ("Debtor" or "Defendant") filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. *Pro Se* Plaintiff Deborah Chitester, in her capacity as administrator of the estate of Alexander Watterson ("Chitester" or "Plaintiff"), filed a timely adversary complaint on October 3, 2013, asserting that her pre-petition claim against her brother, *pro se* Debtor, is nondischargeable under 11 U.S.C. §§ 523(a)(4) and (6). The pre-petition claim consists of a judgment for $4,860 that Chitester, as estate administrator, obtained against the Debtor from the Suffolk County Surrogate's Court.

The Debtor filed an Answer on November 14, 2013.  On March 12, 2014, Chitester moved for summary judgment under the collateral estoppel theory that this Court is bound by the prior findings of the Surrogate's Court.  The Debtor filed opposition to the summary judgment motion on March 28, 2014.  A hearing was held on March 31, 2014, and the Court denied the motion for summary judgment because the Surrogate's Court decision did not make any specific findings on the mental state or culpability of the Debtor sufficient to establish a claim under §

523(a)(4) or (6).  *See Sarasota CCM, Inc. v. Kuncman (In re Kuncman)*, 454 B.R. 276, 282-84 (Bankr. E.D.N.Y. 2011).

On May 30, 2014, Chitester sent the First Set of Interrogatories and Request for Production of Documents to the Debtor; however, the Debtor failed to comply with the document request or respond to the interrogatories.  On August 11, 2014, the Court, upon motion of Chitester, entered an order compelling the Debtor to comply with discovery demands.  The Debtor filed his Response on August 12, 2014, but Chitester filed a Motion to Strike the Debtor's Answer from the record, contending that the Debtor's discovery response was insufficient.

At the trial held on September 9, 2014, the Court denied Chitester's Motion to Strike the Debtor's Answer, but allowed the Debtor only to submit into evidence exhibits that were previously provided to the Plaintiff during discovery.  The Plaintiff's exhibits A, B, C and D were entered into evidence without objections.  The Debtor's exhibits A, B, C and D were entered into evidence without opposition.  Both the Debtor and Chitester testified at trial and had the opportunity to conduct direct examinations.  (Trial Tr., at 24-46; Trial Tr., at 47-55.)  At the conclusion of trial, this matter was taken under advisement.

## Facts

Chitester is the daughter and the Debtor is the son of Alexander Watterson ("Alexander" or "decedent"), who died intestate on March 11, 2009.  Chitester, the Debtor, and their sister Michelle Watterson, are, to this Court's knowledge, Alexander's sole heirs.  (Pl.'s Trial Ex. C. Pl.'s Mot. Summ. J., Ex. A.)

The Debtor had access to and was living at Alexander's apartment after Alexander died. (Trial Tr., at 25:6-8.)  Prior to his passing, Alexander had a personal bank account with Chase. Between 2008 and March 2009, there were no debit-card or ATM transactions on the account. (Amended Complaint ¶ 15, Oct. 14, 2013, ECF. No. 1 ("Am. Compl.").)  On March 16, 2009, five days after Alexander died, a male called Chase bank and requested a copy of the bank statement for Alexander's personal bank account to be mailed to the decedent's home address. (*Id.* ¶ 11.)  The bank assessed a statement copy fee on March 16, 2009.  (Pl.'s Trial Ex. B.)  On March 18, 2009, the decedent's social security check for $1,553 was deposited into his personal bank account at Chase.  (*Id.*)  Between March 24, 2009 and April 2, 2009, several ATM withdrawals and debit card purchases were made to the account, totaling $1,256.  (*Id.*)  On March 24, 2009, there was a $400 debit card transaction at the dental office of a Dr. Blumenthal in Babylon, NY.  (*Id.*)  On March 26, 2009, there was an ATM withdrawal in Deer Park NY, near the decedent's former residence, for $600.  (*Id.*)  On March 28, 2009, there was an ATM withdrawal in Brooklyn, NY, near the Debtor's former residence, for $100.  (*Id.*)  On March 31, 2009, another ATM withdrawal at the same Brooklyn, NY location was made for $120.  (*Id.*)  On that same day, an ATM charge was made at a laundromat in Brooklyn, NY for $36.  (*Id.*)  At the end of the statement period, on April, 9, 2009, the balance in decedent's personal bank account was $390.76.  (*Id.*)

In or around late March, 2009, Chitester contacted Chase to freeze her father's personal bank account. (Am. Compl. ¶ 10; Trial Tr., at 9:21-25, 10:2-5, 12:20-23.)  Between May 12, 2009 and June 9, 2009, there was no activity in the decedent's Chase bank account.  (Pl.'s Mot. Summ. J., Ex. D., Mar. 12, 2014, ECF. No. 19.)  Shortly after the decedent's account was frozen, the Debtor applied, on May 7, 2009, to the Surrogate's Court to be a voluntary administrator of

his father's estate. (Am. Compl. ¶ 12.)  On June 2, 2009, the Debtor was appointed a voluntary administrator, (Pl.'s Trial Ex. A), and on that same day, the Debtor filed an affidavit with the Surrogate's Court, listing the decedent's personal bank account, with a balance of $392, as the only item of value of the decedent's estate.  (Pl.'s Trial Ex. C.)  The Debtor also stated on the affidavit that the decedent did not have any creditors.  (*Id.*)  On June 3, 2009, the remaining $384.76 in the decedent's personal bank account was completely withdrawn.  (Pl.'s Mot. Summ. J., Ex. D.)  The Debtor opened an estate account and deposited $384.76 on June 15, 2009 and $91.77 on June 25, 2009 and, within a day of each deposit, the Debtor wrote two separate checks to cash both deposits.  (Opp'n Summ. J., Ex. B, Mar. 28, 2014, ECF No. 21; Def.'s Tr. Ex. D.)

In the meantime, on May 28, 2009, the Debtor filed a police report with the Suffolk County Police Department alleging that a burglary occurred at the decedent's home on May 21, 2009, and that assorted rare coins valued at $2,000, a $750 gold watch, and $500 in cash were stolen.  (Pl.'s Trial Ex. D.)

On June 25, 2009, Chitester filed a petition for letters of administration asking the Surrogate's Court to dismiss the voluntary administration proceeding and appoint her as the administrator of the decedent's estate. (Am. Compl. ¶ 14; Pl.'s Mot. Summ. J., Ex. A.)  The Debtor objected.  (*Id.*)  On July 14, 2009, the Debtor filed the Report and Account in Settlement of the Estate ("Report"), where he again listed the decedent's personal bank account with a $380 balance and also included $220 in coins as the assets of the estate.  (Pl.'s Mot. Summ. J., Ex. B.)  On the Report, the Debtor claimed that he used the $380 balance in the decedent's personal bank account to pay rent to the decedent's landlord; that Michelle received $110 in rare coins; and that Chitester refused $110 in rare coins.  (Pl.'s Mot. Summ. J., Ex. B.)  Chitester and the Debtor filed a stipulation with the Surrogate's Court, and the court dismissed the voluntary

administration proceeding on November 25, 2009.  (Pl.'s Mot. Summ. J., Ex. A.)  Pursuant to the
stipulation, the Debtor agreed to turn over 12 items of personal property of the decedent, which
included funds from the decedent's bank account from the time that he was incapacitated, other
personal property of the decedent, and the items that the Debtor reported as "stolen." (*Id.* at 2.)
The Debtor did not turn over the 12 items to Chitester as agreed in the stipulation, and the court
reopened the proceeding, (*Id.* at 1.), and appointed Chitester as the administrator of the
decedent's estate on June 16, 2010 (Am. Compl. ¶ 14).

     After being appointed administrator, Chitester filed a complaint with the Surrogate's
Court to recover the assets the Debtor agreed to turn over in the stipulation.  (Pl.'s Mot. Summ.
J., Ex. A.)  On February 28, 2012, the Surrogate's Court held an inquest hearing to determine the
value of the stolen items, the other personal property of the decedent, and the funds Alexander
had in his bank account from the time he was hospitalized to the time of his death.  (*Id.*)
Chitester alleged before the Surrogate's Court that the Debtor "failed to carry out his fiduciary
duties, failed to make any distributions of the decedent's estate, and failed to pay bills of the
estate." (*Id.*)  The Debtor did not appear at the inquest hearing, but was represented by counsel.
(*Id.*)  The Debtor's attorney asserted that "the personal property at issue was stolen from his
client, that his client was not negligent, and had not breached his fiduciary duty[,]…and  any
money that the decedent did have was used to pay decedent's debts."  (*Id.*)  However, the
Debtor's attorney did not provide the Surrogate's Court with any documentation of the debts that
were paid on behalf of the decedent or offer any sworn testimony of what the Debtor did with the
decedent's funds or personal property.  (*Id.*)

     On June 28, 2012, Chitester, as administrator of the decedent's estate, was granted a
$4,860 judgment against the Debtor for the Debtor's failure to account for and turn over estate

assets.  (*Id.*) The Surrogate's Court found that the decedent had $2,110.76 in funds at the time he became incapacitated in the hospital.  (*Id.*)  The Surrogate's Court also accepted the value of the stolen items provided in the police report.  (*Id.*)  However, the Surrogate's Court did not make any determination regarding the mental state of the Debtor.  (*See id.*)

## Discussion

### *Nondischargeability under § 523(a)(4) – Defalcation While Acting in a Fiduciary Capacity*

Section 523(a)(4) provides that any debt "for fraud or defalcation while acting in a fiduciary capacity" is nondischargeable.  The plaintiff bears the burden of establishing by a preponderance of evidence that each element of the statute has been met.  *Grogan v. Garner*, 498 U.S. 279, 287, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *Duncan v. Duncan (In re Duncan)*, 331 B.R. 70, 76  (Bankr. E.D.N.Y. 2005).  Accordingly, to prevail under the discharge exception for fiduciary fraud or defalcation, a plaintiff must show that: "1) an express [or technical] trust existed, 2) the debt was caused by fraud or defalcation, and 3) the debtor acted as a fiduciary to the [plaintiff] at the time the debt was created."  *See Klingman v. Levinson*, 831 F.2d 1292, 1295 (7th Cir. 1987).

### A.  Fiduciary Capacity

The Bankruptcy Code does not define "fiduciary capacity."  However, the bankruptcy courts in this circuit have made it clear that the "broad general definition of fiduciary, involving confidence, trust and good faith, is not applicable in dischargeability proceedings under §

523(a)(4)." *Wisell v. Wisell (In re Wisell)*, 494 B.R. 23, 38 (Bankr. E.D.N.Y. 2011) (quoting *Zohlman v. Zoldan*, 226 B.R. 767, 772 ( S.D.N.Y. 1998)).  The meaning of fiduciary for § 523(a)(4) purposes is a matter of federal law.  *Zohlman v. Zoldan*, 226 B.R. at 772.  The fiduciary relationship must be pursuant to either an express or technical trust, not to "constructive or implied trusts, or any trust where the existence of the trust is created merely on the basis of wrongful conduct."  *Id.*  However, bankruptcy courts may look to state law to determine whether a trust exists.  *Id.* at 773.  "The statute must define the trust res, spell out the trustee's fiduciary duties and impose a trust prior to and without reference to the wrong which created the debt."  *Woodworking Enters., Inc. v. Baird (In re Baird)*, 114 B.R. 198, 202 (B.A.P. 9th Cir. 1990).  Therefore, we look to the New York Surrogate's Court Procedure Act ("SCP Act") to determine whether an express or technical trust exists.  *Stone v. Stone (In re Stone)*, 90 B.R. 71, 79 (Bankr. S.D.N.Y. 1988).

Article 13 of the SCP Act establishes a technical trust between a voluntary administrator and a decedent's estate, the beneficiaries and the creditors.  A voluntary administrator of an estate is a fiduciary.  N.Y. S.C.P. § 1306(3).  Correspondingly, § 103(21) of the SCP Act includes a voluntary administrator in its definition of a fiduciary.  "A voluntary administrator shall be deemed to be the fiduciary of the estate until another fiduciary is appointed, and…shall have the rights, powers and duties with respect to personal property of an administrator duly appointed for the estate."  *Id.* § 1306(3).  A voluntary administrator must open an estate bank account and deposit all money received in the estate account, pay expenses and debts of the decedent from the assets of the decedent coming into his or her possession, and then distribute the balance pursuant to New York intestate laws.  *Id.* § 1307.  A voluntary administrator shall

"[a]ccount for all personal property of the decedent received and disbursed by him ...." *Id.* § 1307(2).

> A voluntary administrator is a fiduciary and is accordingly liable to all persons aggrieved by his wrongful actions, such as the decedent's beneficiaries, creditors, or a fiduciary appointed after the voluntary administrator has served. *Id.* § 1308.

Under the SCP Act, the trust *res* consists of all of the personal property of the decedent that the Debtor received or came into possession of. The Debtor, as voluntary administrator, was appointed as a fiduciary and had all of the rights, powers and the duties of an administrator duly appointed (e.g. to open an estate account, pay off debts of the estate, and distribute the balance to the beneficiaries). The statute makes it clear that the Debtor, as voluntary administrator, was required to account for all personal property he received or distributed. Moreover, under the SCP Act, the Debtor is liable for any wrongful action to Chitester, both in her capacity as an administrator and as a beneficiary of her father's estate. The Debtor's fiduciary duty ended when Chitester was appointed the fiduciary on June 16, 2010.

Because the SCP Act defined the trust res, imposed a trust without reference to the alleged wrongful act, and imposed defined obligations upon the Debtor, giving rise to a technical trust, the Court finds that a fiduciary relationship existed between the Debtor and the decedent's estate for purposes of § 523(a)(4).

### B. *Defalcation While Acting in a Fiduciary Capacity*

Next, the Court must determine whether the Debtor has, based on the alleged conduct, committed defalcation while acting in a fiduciary capacity under § 523(a)(4). The Supreme Court recently held that defalcation for purposes of § 523(a)(4) of the Bankruptcy Code requires

an "intentional wrong," "conduct the fiduciary knows is improper" or "reckless" conduct. *Bullock v. BankChampaign, N.A.*, ___ U.S. ___, 133 S.Ct. 1754, 1759, 185 L.Ed.2d 922 (2013). The Second Circuit, as recognized by the Supreme Court, was employing a similar standard. *See Denton v. Hyman (In re Hyman)*, 502 F.3d 61, 68 (2d Cir. 2007) (defining defalcation as "conscious misbehavior or extreme recklessness"); *Zohlman v. Zoldan*, 226 B.R. at 778 (defining defalcation as "willful neglect"—something akin to recklessness or gross negligence.). The Supreme Court, in *Bullock*, describes a fiduciary's conduct as recklessness where "the fiduciary 'consciously disregards' (or is wilfully blind to) 'a substantial and unjustifiable risk' that his conduct will turn out to violate a fiduciary duty." *Bullock*, 133 S.Ct. at 1759-60. The "standard does not reach fiduciaries who may have failed to account for funds or property for which they were responsible only as a consequence of negligence, inadvertence or similar conduct not shown to be sufficiently culpable." *In re Hyman*, 502 F.3d at 69.

Thus, whether the Debtor's conduct constitutes defalcation is guided by the debtor's "knowledge" of or "recklessness" towards his wrongful behavior as a fiduciary. Under the reckless standard, the Debtor must have actual knowledge of his fiduciary duties –constructive knowledge will not suffice. *Cupit v. Cupit (In re Cupit)*, 514 B.R. 42, 51 (Bankr. D. Colo. 2014) ( "There must be some evidence that the debtor was aware of the fiduciary duty and of the risk that his conduct would violate that duty."); *see also E. Armata, Inc. v. Parra (In re Parra)*, 412 B.R. 99, 106 (Bankr. E.D.N.Y. 2009). Although "conscious disregard," " may be inferred from the particular facts of the case." *Cupit*, 514 B.R. at 51. Additionally, a "willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of wrongdoing and who can almost be said to have actually known the critical facts." *Id.* at 52. Moreover, to determine whether a risk is "substantial," courts look at both "the likelihood that

harm will occur and the magnitude of the harm." *Id.* (quoting *People v. Hall*, 999 P.2d 207, 218 (Colo. 2000). To determine whether a risk is "unjustifiable," courts assess "the nature and purpose of the actor's conduct relative to how substantial the risk is." *Id.* at 52. Therefore, a failure of a fiduciary to account for or turn over trust property is also defalcation within the meaning of § 523(a)(4) if the debtor has either knowledge of, or is recklessness with regard to, the wrongful conduct that constitutes a breach of fiduciary duty.

In determining whether the Debtor had the requisite state of mind to meet the defalcation standard, the Court looks at the witness's credibility and the evidence presented. *Anderson v. Bessemer, N.C.*, 470 U.S. 564, 575, 105 S.Ct. 1504 (1985) (a trial court may look at whether "the story itself may be so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it."); *Bettijaine Gentry & Gentry Promotions, Inc. v. Kovler (In re Kovler)*, 249 B.R. 238, 256-57 (Bankr. S.D.N.Y. 2000) ("It is universally recognized that deportment and demeanor are significant in assessing the credibility of a witness."). The Court will also look at "the consistency of [the Debtor's] testimony under oath at different times" and may also apply "ordinary common knowledge of human nature and common sense to measure probability" of the facts provided by the witness. *In re Kovler*, 249 B.R. at 256.

The Debtor argues that he did not knowingly breach his fiduciary duty to the decedent's estate. However, the Debtor's testimony at trial was inconsistent and the Court finds his credibility to be lacking. First, the Debtor admits to making withdrawals from his father's bank account after he died and he did not establish any authority on which he did so. Shortly after the decedent's personal account was frozen, the Debtor applied to be a voluntary administrator and withdrew the remaining funds once he was appointed. Second, when asked to account for the property of the decedent's estate that the Surrogate's Court held him liable for the Debtor

testified that he used funds from the decedent's bank account, in part, to pay the decedent's rent. However, the withdrawals made from the decedent's bank account were not made in amounts or in intervals which would have been consistent with the Debtor's payment of rent.  In addition, at trial the Debtor did not produce an affidavit from the landlord substantiating such rental payments; nor did he provide rent receipts, or have the landlord testify on his behalf.

Third, initially the Debtor testified that the debit card transaction at the dental office of Dr. Blumenthal in Babylon, NY, made after the Debtor's father died, was not made by him.  The Debtor, without equivocation, denounced knowing Dr. Blumenthal.  Later, the Court asked the Debtor about the debit card transactions at the dentist and the Debtor insisted that he had never heard of Dr. Blumenthal.  Upon further questioning, the Debtor retracted his testimony, admitting that it is very possible that Dr. Blumenthal may have been his dentist at one point.  The Debtor also claimed that the transaction at the laundromat in Babylon, NY, near the Debtor's former apartment, was not made by him because his father did not have a debit card.  The Debtor even intimated that the subject transactions may have been made by his mother.  Ultimately, the Debtor admitted that he in fact made all of the withdrawals and debit card transactions, including those at the laundromat and dental office.

Fourth, there were also items of valuable personal property at the decedent's apartment when he died that the Debtor was unable to account for in the Surrogate's Court proceeding. Although the Debtor reported all of the decedent's valuable items as stolen after he applied to become a voluntary administrator, ultimately the Surrogate's Court held him liable for the value of those items.  According to the Surrogate's Court judgment, the Debtor possessed: (1) $2,000 in assorted rare coins, a $750 gold watch, and $500 cash, the Debtor reported to the police as "stolen," (2) $2,110.76 that the decedent had in his account at the time the Debtor became

incapacitated, and (3) other items.  The Surrogate's Court assessed total damages of $4,860.  By holding the Debtor liable for the value of the allegedly stolen items, it appears that the Surrogate's Court did not give any credence to the Debtor's argument that the assets were stolen. Further, the Surrogate's Court noted that there was no documentary evidence to support the Debtor's claims and the Debtor failed to appear and testify at trial.

Although lacking in sufficient detail to allow this Court to apply collateral estoppel effect to the judgment, the Surrogate's Court did find that the Debtor failed to account for property of the decedent's estate while he was a fiduciary.  The judgment also found that the Debtor failed to comply with the stipulation he entered into with Chitester and that he failed to turn over certain property of the decedent's estate that the Debtor possessed.  It appears that the Surrogate's Court did not give any weight to the Debtor's argument that he paid rent with the funds and that the assets were stolen.

Furthermore, the record here establishes that the Debtor had actual knowledge of the fiduciary duty that he breached, and that he recklessly disregarded this duty.  The Debtor **voluntarily** applied to the Surrogate's Court to administer his deceased father's estate.  The Debtor filed a sworn affidavit with the Surrogate's Court listing the decedent's personal assets, but excluding the assets that he possessed after the decedent died.  He attested that: "I undertake to act as voluntary administrator/rix of the decedent's estate, and to administer it pursuant to Article 13 of the Surrogate's Court Procedure Act." (Pl.'s Trial Ex. C.)  Further, the Debtor attested that he had a duty to "deliver to the court appointed fiduciary a complete statement of [his] account and all assets and funds of the estate in [his] possession" if letters of administration were later granted.  (*Id*.)  Indeed, the Debtor filed a sworn report that the decedent's personal bank account with a balance of $380 and $220 in coins were the only items of value that came

into his possession and that it was a true account of the property of the decedent's estate that came into his possession. (Pl.'s Mot. Summ. J., Ex. B.) The Debtor also set up an estate account as required under the Surrogate's Court Procedure Act, (Def.'s Trial Ex. B), and knew he had a duty to do so when he attested to this duty in his sworn affidavit, (Pl.'s Trial Ex. C). Further, the Debtor filed a stipulation with Chitester in the Surrogate's Court agreeing to return property of his father's estate that were in his possession, and he was ordered by the Surrogate's Court to do so. (Pl.'s Mot. Summ. J., Ex. A.) Therefore, it is clear that the Debtor had actual knowledge of his duty to account for the property of the decedent coming into his possession and deliver a report of such account to a later-appointed fiduciary. The Debtor was aware that he had a duty to turn over such property after the Surrogate's Court found that he had property of the decedent in his possession that were to benefit the estate and its creditors and ordered the Debtor to return such property.

All of the facts show the Court that the Debtor had the requisite mental state of actual knowledge of, and reckless disregard to, his wrongdoing to meet the defalcation standard within the meaning of § 523(a)(4). Accordingly, the $4,860 judgment is nondischargeable under § 523(a)(4).

## CONCLUSION

For the foregoing reasons, the Court finds that $4,860 judgment of the Surrogate's Court should be excepted from discharge for defalcation while acting as a fiduciary under § 523(a)(4). The Court need not address whether the judgment should be excepted from discharge pursuant to § 523(a)(6).

A Judgment consistent with this Memorandum Decision will issue forthwith.


Dated: Central Islip, New York
      January 8, 2015                          _**/s/ Robert E. Grossman**_
                                               Robert E. Grossman
                                               United States Bankruptcy Judge